UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-108

JOSEPH SALYER                                                                                         PLAINTIFF

v.

GENERAL MOTORS CORPORATION                                              DEFENDANT/
                                                                                                      THIRD PARTY PLAINTIFF

v.

N.A. WATER SYSTEMS, LLC and
HENDERSON SERVICES, LLC                                                    THIRD PARTY DEFENDANTS

## MEMORANDUM OPINION

General Motors ("GM") filed a Motion for Summary Judgment in this matter. (Docket # 31). Joseph Salyer ("Salyer") responded. (Docket # 36). GM filed a Reply to Salyer's Response. (Docket # 39). The matter is now ripe for adjudication. The Court now GRANTS GM's Motion for Summary Judgment.

## BACKGROUND

This case arises from Salyer's slip and fall claim against GM. Salyer was employed by a subcontractor working for GM, Henderson Services, and was present on GM's water treatment plant floor to perform electrical work. At the time of the accident, Salyer was alone in the plant, performing a walkthrough. He left the normal walkways of the plant and entered an area congested with piping and machinery. Henderson employees stored their tools and supplies in this area. Salyer picked up a drill case belonging to Henderson and continued his walkthrough. While carrying the case, he tripped over a raised grate in the floor covering instruments and

conduits, injuring himself. Salyer now sues GM for failing to provide a safe environment at the plant, causing his fall.

GM had taken safety precautions regarding the grate in question. Though the grate was raised from the concrete floor of the plant less than one inch, GM outlined the raised area in yellow paint. GM installed a concrete grade leading up to the grate, and beveled the edges of the grate at a thirty degree angle. Salyer admits that if he had looked, he would have likely seen that the grate was raised and that he was not watching where he placed his feet when he tripped. Salyer admits that there was nothing hiding the raised grate from his view and that it was his job to identify potential safety hazards in the plant for other Henderson workers.

The parties do not contest that Salyer had been on the ground floor of the plant at least seven times. Salyer only recalls being near the grate once, but admits he may have been there more often. Slayer specifically recalls work being done on the conduits beneath the grate, the grate's removal, barriers placed around the hole while the grate was open, and the removal of the barriers and replacement of the grate. GM suggests that Salyer was frequently near the grate because Henderson employees stored their tools nearby. Furthermore, GM's site utility manager, Jim Divilbiss, recalls seeing Salyer near the grate numerous times and claims that he and Salyer stood on the grate on at least one occasion.

None of the above facts are contested between the parties. GM now moves for summary judgment, suggesting that the uncontested facts mandate a judgment in its favor. Salyer claims that issues of fact as to whether the grate was indeed an obvious hazard, whether GM had a duty to make the grate safer, and whether Salyer was aware of the grate are contested facts relevant to the decision, making summary judgment inappropriate. GM responds that the Court may decide

as a matter of law that Salyer was aware of the grate and that the grate was an obvious obstacle. GM also argues that it was not required to lessen any danger posed by the grate and, at any rate, could not make the grate any safer than it was.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "The plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment. "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary

judgment inappropriate." *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 247-49).

## ANALYSIS

Under Kentucky tort law, a property owner is liable to an invitee[1] for a condition on the property

> if, but only if, [it] (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.
> *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 367 (Ky. 2005).

However, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* "If a hazard is 'known or obvious to' the invitee, the owner has no duty to warn or protect the invitee against it." *Id.* at 368. Kentucky courts have also carved out an exception to this exception: A possessor of land is liable to an invitee for an injury, even if the obstacle is open and obvious, where "the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. *Id.* at 367 (quoting Restatement

---

[1] The parties agree that Salyer qualifies as an invitee under Kentucky law, since he was "upon the premises at the express or implied invitation of [GM]... in connection with business of [GM]." *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 367 (Ky. 2005).

(Second) of Torts § 343A cmt. f). This rule applies, for example, when "the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it...." *Id.*

**A.     General Standard for Liability**

The Court first determines whether GM would be liable to Salyer under the general standard set forth in Kentucky law. It is clear that GM recognized the risk of injury presented by the grate raised above the floor. Mr. Divilbiss, the premises manager, addressed this potential for danger by beveling the edges of the grate to make the grate less of a hazard. Mr. Divilbiss also placed brightly colored paint around the grate to draw pedestrians' attention to it as a potential walking hazard. The Court cannot decide as a matter of law whether a reasonable invitee would still fail to see the grate after it was marked, or would not realize that he needed to step up onto the grate. The Court also declines to decide as a matter of law whether the beveling and painting around the edge of the grate constitute reasonable care by GM to protect invitees from the danger of tripping on the grate.[2] Because the Court cannot determine that GM is free from liability as a matter of law under the general standard, the Court continues its analysis to find whether GM is entitled to be excepted from liability as a matter of law.

---

[2]Salyer urges the Court that it should not decide that GM's preventive actions were reasonable as a matter of law because GM's safety measures were allegedly inadequate under and OSHA standard. The Court acknowledges that the OSHA standard might be relevant in determining a reasonable standard of care in the matter. However, because the Court does not need to decide as a matter of law whether GM took reasonable steps to protect invitees from tripping over the grate, the Court need not consider the persuasive value of the OSHA standard here.

GM also urges the Court to consider that no further actions were practical to make the grate safer. Because the Court is not determining whether GM's actions in making the grate safer were adequate, the Court need not consider any safer alternatives. Indeed, no alternatives were suggested by Salyer in this matter.

**B.      Exception to the Rule**

GM is entitled to summary judgment if the grate was "known" or "obvious" to Salyer. "'Known' means 'not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves.'" *Horne*, 170 S.W.3d at 367 (quoting Restatement (Second) of Torts § 343A cmt. b).  GM argues that the danger posed by the raised grate was known to Salyer.  Salyer admits that he was aware that the grate was in place, that he had worked near it before, and that he had seen the grate removed from its position on the floor.  Salyer does not contest GM's evidence that Mr. Divilbiss had seen Salyer on the grate multiple times, that Salyer stored his tools near the grate and had reason to be in the area often, and that Salyer's job as a supervisor required him to be aware of potential safety hazards for his fellow employees. Furthermore, Salyer admitted in his affidavit that he intended to step up onto the grate, indicating that he understood the potential that it might trip him.  The Court finds as a matter of law that Salyer was subjectively aware of both the presence and the danger of the grate, but simply failed to take adequate care of where he walked.  Therefore, GM should not be found liable for Salyer's injuries.

Even if the Court found that the grate was not known to Salyer, GM proposes that the grate was "obvious" to Salyer.  "'Obvious' denotes that 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Id.*  (quoting Restatement (Second) of Torts § 343A cmt. b).  Salyer admits that nothing impeded his view of the grate.  A reasonable person in his situation would likely recognize the need to use caution due to the bright yellow marking around the grate.  Also, a reasonable person would have encountered grates on floors

6

and sidewalks in the past, and would be aware of the need to exercise caution when walking near them due to the likelihood that the grate will not be entirely flush with the surrounding floor.[3] Furthermore, the parties agree that Salyer was walking in an area separate from the main pathways in the plant. Because the area was congested with pipes, machinery, and conduits, a reasonable person would recognize the need to be particularly careful in avoiding obstacles. In addition to the fact that Salyer admits he personally was aware of the grate, the Court finds as a matter of law that the well-marked and readily visible grate was an "obvious" obstacle to reasonable invitees in the area.

      Kentucky courts have held that, where the obstacle was obvious or known to the plaintiff, judgment in favor of the possessor of land is appropriate as a matter of law. In *Bonn*, the plaintiff fell into an open grease pit at an automobile service station. The plaintiff was aware that these pits were routinely present in service stations so that mechanics could access the undersides of cars. The service station was well-lit and the open pit was not obscured from the plaintiff's view. Thus, where the danger presented by the open pit was obvious to a reasonable person in the plaintiff's position, the Kentucky Court of Appeals held as a matter of law that the service station was not liable for plaintiff's injuries. *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526 (Ky. 1969). In *Lone Star*, the plaintiff was injured after tripping on peanut shells strewn on a restaurant floor. The plaintiff had been present in the restaurant for some time and admitted that she was aware of the presence of peanuts on the floor and the potential that the peanuts might

---

[3]Salyer states that, had he looked closely, he might have seen that the grate was raised slightly from the floor. He adds that grates can, however, be deceiving. The Court does not find this persuasive to show that the danger posed by the grate was not obvious. Instead, it shows that Salyer was aware that the grate was there and that there was a possibility that the grate might be raised or recessed from the rest of the floor, creating a hazard.

impede walking. The Kentucky Court of Appeals held as a matter of law that, where the plaintiff admitted she knew about the obstacle she fell on and the possibility that she might have tripped, the restaurant was not liable for her fall. *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490 (Ky. App. 1999). Kentucky courts have drawn a contrast between cases where the dangerous condition was obvious or known to the plaintiff, making summary judgment appropriate, and where the dangerous condition was unknown and hidden from the plaintiff. *Horne*, 170 S.W.3d at 369. Only in the latter situation is a trial on the merits necessary to determine whether the possessor of land took reasonable precautions to prevent the injury to the invitee. *See id.*

**C.     Exception to the Exception**

Salyer argues that, even though the grate was an known and obvious danger to him, summary judgment is not appropriate. Kentucky courts have held that, even if the obstacle is known or obvious to an invitee, the possessor of land might still be held liable if it would reasonably anticipate that the invitee will be too distracted to notice the otherwise obvious or known danger. Salyer has presented no reason that GM should anticipate that he would be distracted from watching his step. Salyer submits that he was distracted from watching his step because he was carrying a drill case and performing a walk-through of the premises. However, GM had no reason to believe that a typical invitee would be distracted from the need to exercise care or would be distracted from the grate. In fact, the yellow outline of the grate would imply to the reasonable person to exercise caution and nothing in the vicinity was likely to dissuade that person from stepping carefully through the area of the plant. In particular, Salyer should have been more aware of his surroundings, since he was performing a walk-through; he was

examining the work performed and had recently been looking at the floor to pick up the drill case. The Court is not persuaded that GM should anticipate that an invitee would be distracted from the otherwise known and obvious danger presented by the grate. Therefore, summary judgment is appropriate in this matter.

## CONCLUSION

For the above reasons, the Court GRANTS GM's Motion for Summary Judgment. An appropriate Order shall issue.